UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:18-cr-00156-JMS-MG-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| FRANK POWELL | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☐ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00156-JMS-MG |
| | ) | |
| FRANK POWELL, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Frank Powell has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). [Filing No. 370.] For the reasons explained below, his motion is **DENIED**.

**I.**
**BACKGROUND**

In October 2019, Mr. Powell pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, one count of attempted bank fraud in violation of 18 U.S.C. §§ 1344(1) and (2), and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(1). [Filing No. 137; Filing No. 211.] The offense conduct is summarized as follows:

> The defendant is the leader of an organized Indianapolis-based group that utilized false and fraudulent checks to purchase gift cards and merchandise at retail businesses throughout the United States, with his preference being Kroger. All three of the defendant's co-conspirators stipulated to that fact in their respective plea agreements. . . .
>
> The scope of the scheme was far-reaching, touching on at least 12 states with more than 5,000 fraudulent checks. The resulting loss attributable to the charged defendants was approximately $303,505.27.
>
> The defendant had a system in place to make and use the false and fraudulent checks. He recruited over 20 individuals to run checks for him (hereinafter,

"runners"). . . .  The defendant was known to others as "Breadman" or "Bread," because he was a person always getting money.

[Mr.] Powell then made fake checks for all the runners.  He had a laptop, a printer with specialty ink, and blank check stock which he used to print the checks.  The defendant used the runner's real name or alias and real routing numbers; however, he made up the account numbers on the checks.  Powell would provide each runner with checks in their names or aliases and would sometimes leave checks for the runners in a mailbox at a residence at Brookside, which was a "trap house" that the defendant used to run, among other things, his illegal check-making operation. . . .

The runners would pay the defendant in gift cards purchased with the fake checks. . . .

For many of the fraudulent transactions, the defendant and his co-conspirators provided false and fraudulent driver's licenses as a piece of identification.  To further the fraud, the defendant and his co-conspirators would also scratch off the last few digits of the driver's license number and, when questioned by an employee at a Victim Retail Store about the illegible number, the co-conspirator would verbally provide different numbers for the driver's license to prevent their license from being flagged as fraudulent.

The defendant and his co-conspirators were aware of how Kroger's check authorization system worked and utilized that knowledge to focus on and victimize Kroger and its related businesses as targets of the scheme to defraud.  On many, but not all transactions at Kroger, the defendant and his co-conspirators used fraudulent checks to complete small dollar amount transactions, which would typically be approved by Kroger's check authorization system. The defendant and his co-conspirators then completed second, higher dollar amount transactions using fraudulent checks with the same bank account and routing information as the first transaction. Kroger's check authorization system would, on most occasions, approve the second transaction without full verification, based on the first transaction.  The sophisticated nature of this scheme enabled the defendant and his co-conspirators to complete the fraudulent transactions without being detected. . . .

The defendant also accompanied his co-conspirators outside of Indiana to present and use fraudulent checks at the Victim Retail Stores, including transactions with Duerson in Ohio and Arizona.  When Powell traveled, he brought his computer, printer, and blank check stock to make checks when needed. . . .

Beginning on or about March 12, 2018, the defendant devised a scheme to defraud and obtain money from Citizens State Bank of New Castle, Indiana, by means of false and fraudulent pretenses, representations or promises.

On or about March 12, 2018, the defendant submitted a loan application through Carmel Motors to obtain financing from Citizens State Bank of New Castle, Indiana

> in the amount of $26,924 for the purchase of a Cadillac Escalade from Carmel Motors. The defendant used personal information of Individual #1 on the financing application for the purchase of the Cadillac Escalade, including Individual #1's name, date of birth and social security number (all considered "means of identification" of Individual #1).
>
> The defendant applied for the financing through an online application on Carmel Motors' website through Dealertrack, an online portal that assists with the automotive financing process, to include credit report access and credit application processing. . . . The defendant's fraudulent loan application was processed by Carmel Motors on or about March 12, 2018.
>
> The defendant then purported to be Individual #1 and spoke with an employee from Carmel Motors about setting up an appointment to review the financing application. During that conversation, the defendant provided the Carmel Motors employee a photograph of a fraudulent Illinois driver's license via text message. The fraudulent Illinois driver's license contained the name, address, date of birth, and driver's license number of Individual #1 (considered a "means of identification" of Individual #1). However, the Illinois driver's license was modified to include the defendant's photograph instead of that of Individual #1.
>
> On or about March 12, 2018, the defendant met with an employee at Carmel Motors to complete the financing paperwork. After Carmel Motors realized that the defendant was not Individual #1, the defendant offered a sectional sofa to an employee of Carmel Motors in exchange for not reporting such concerns. . . .

[Filing No. 157 at 5-9.]

Mr. Powell faced a guidelines range of 110 to 137 months of imprisonment. [Filing No. 212 at 1.] The Court sentenced him to 134 months of imprisonment, followed by 5 years of supervised release. [Filing No. 211 at 2-3.] The Bureau of Prisons currently reports Mr. Powell's anticipated release date (with good-conduct time included) as December 2, 2027. https://www.bop.gov/inmateloc/ (last visited July 10, 2025).

Mr. Powell filed a *pro se* Motion for Compassionate Release on April 23, 2025. [Filing No. 370.] He argues that he establishes extraordinary and compelling reasons for compassionate release based on: (1) family circumstances; (2) his mental and physical health; and (3) his

4

rehabilitation. [Filing No. 370.] The Government opposes the motion. [Filing No. 374.] Mr. Powell did not file a reply. The motion is now ripe for the Court's consideration.

## II.
### DISCUSSION

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

The Sentencing Commission has set forth the following considerations when evaluating a request for compassionate release: First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement"; and second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(1)(A) and (a)(2). If a court finds that extraordinary and compelling reasons exists and that the defendant is not a danger to the safety of any other person or to the community, it goes on to consider the sentencing factors in 18 U.S.C. § 3553(a), "to the extent that they are applicable." U.S.S.G. § 1B1.13(a).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction," *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines

Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. See U.S.S.G. § 1B1.13 (Nov. 2023).

Mr. Powell argues that three extraordinary and compelling reasons exist here, and the Court addresses each in turn.

### A. Family Circumstances

Mr. Powell argues that his family circumstances, specifically caring for his 65-year-old mother who is disabled and was recently diagnosed with Stage 3 breast cancer, constitute an extraordinary and compelling reason for compassionate release. [Filing No. 370 at 1.]

The Government argues that Mr. Powell has not demonstrated that his mother is incapacitated or unable to care for herself. [Filing No. 374 at 11-13.] Moreover, even if she is, the Government argues that he has not shown that he is the only available caregiver. [Filing No. 374 at 11-13.]

Mr. Powell did not file a reply.

U.S.S.G. § 1B1.13(b)(3)(C) provides that an extraordinary and compelling reason exists when the defendant can show "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." "While the relevant policy statement, § 1B1.13(b)(3)[ ], does not define 'incapacitated,' the term's plain meaning—'made incapable of or unfit for normal functioning'—and the statutory context, especially the associated need for a 'caregiver,' make clear that 'incapacitated' implies that the person is incapable of caring for themselves." *United States v. Reedy*, 2024 WL 5247954, at *11 (N.D. Ill. Dec. 30, 2024) (quoting *Incapacitated*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incapacitated); *States v. Lance*, 2023 WL 7927751, at *3 (C.D. Ill. Nov. 16, 2023) ("the evidence [plaintiff] submitted shows only that his father 'has limited mobility, . . .

6

numbness in both hands, cannot sit or stand for too long, has uneven balance, . . . needs help getting dressed in the morning,' . . . 'can't drive because he can't turn his head[,] . . . [and] can't lift anything over 30 pounds or lift anything over his head . . . While this certainly shows that [plaintiff's] father has limitations and needs assistance, it appears he can still engage in some self-care activities and he is not incapacitated'").

The Court finds that Mr. Powell has not shown that he meets the requirements of this subsection. He does not submit any evidence regarding the health of his mother and instead relies on his own statements, which are insufficient. Moreover, he does not argue or submit evidence that he is the only available caretaker. To the contrary, his motion asserts that if he were released, he would live with his mother and sister, which undermines any such argument. [Filing No. 370 at 3.] While unfortunate, Mr. Powell's family circumstances, namely the health of his mother, is not an extraordinary or compelling reason for compassionate release, whether considered alone or in conjunction with any other reason.

   **B.**  **Mr. Powell's Health**

Mr. Powell asserts that his mental health and diabetes are deteriorating in prison and that he is not receiving proper healthcare treatment for hypertension or for lowering his Body Mass Index of 50. [Filing No. 370 at 1.] He submits medical records in support. [Filing No. 370-1 at 1-16.]

The Government contends that his issues do not rise to the level of extraordinary and compelling and that "the most recent medical evaluations of [Mr.] Powell suggest that [his] health conditions are well-managed in prison and mental health issues are under control" and submit additional, more recent, medical records. [Filing No. 374 at 14-15; Filing No. 374-1 though Filing No. 374-4.] The Government also contends that "to the extent that [Mr.] Powell is not receiving

7

what he believes to be the proper treatment for his medical conditions, such allegations might form the basis for relief in a civil suit . . . , but such allegations are not grounds for a sentence reduction under § 3582(c)(1)(A)." [Filing No. 374 at 14.]

Section 1B1.13(b)(1)(B) and (C) provide that an extraordinary and compelling reason exists where:

**(B)** The defendant is--

**(i)** suffering from a serious physical or medical condition,
**(ii)** suffering from a serious functional or cognitive impairment, or
**(iii)** experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

The Court finds that Mr. Powell has not shown that he meets the requirements of either subsection.  Mr. Powell's health issues and medical records do not evince a substantially diminished ability to provide self-care.  The most recent medical documents (those submitted by both Mr. Powell and the Government) reveal that Mr. Powell has "no significant mental health issues," and that his anxiety disorder is stable and his medication for it will continue.  [Filing No. 374-2 at 2; Filing No. 374-3; *see* Filing No. 370-1 at 3-6.]  As to his diabetes, the most recent medical record indicates that his condition is "worsening, will add medications."  [Filing No. 374-2 at 3.]  But worsening does not indicate, nor does Mr. Powell argue, that it is debilitating or otherwise affects his ability to provide self-care.  Nor does any other evidence suggest as much with his other medical conditions.  Rather, the medical documents establish that Mr. Powell is receiving medical care for his conditions—both for his diabetes, hypertension, and mental health—

that those conditions are being managed in prison, and that his mental health is under control. Further, as to his argument that he is not receiving proper treatment, a motion for compassionate release "is not the right vehicle" for that argument. *United States v. Miller*, 2022 WL 2187555, at *2 (7th Cir. June 16, 2022); *United States v. Bridgewater*, 995 F.3d 591, 599 (7th Cir. 2021).

The Court finds that Mr. Powell has not met his burden of establishing that his medical conditions rise to the level of an extraordinary and compelling reason to grant him compassionate release, whether considered alone or together with any other reason.

### C. Rehabilitation

Mr. Powell argues that he has completed several classes and certificates while incarcerated and submits evidence of such. [Filing No. 370 at 2-4; Filing No. 370-1 at 17-23.]

The Government asserts that rehabilitation alone cannot be an extraordinary and compelling reason to reduce a sentence. [Filing No. 374 at 15.]

While Mr. Powell's rehabilitation and achievement of certificates while incarcerated is commendable, [Filing No. 370-1 at 17-23], "rehabilitation cannot serve as a stand-alone reason for compassionate release" no matter how exceptional, *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) (quotations and citation omitted); 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d) (Nov. 2023). Whether considered along or in conjunction with any other reason, the Court finds that Mr. Powell's rehabilitation is not an extraordinary or compelling reason to grant him compassionate release.

The Court, in its discretion, finds that Mr. Powell has not carried his burden to show that there are extraordinary and compelling reasons for his release, whether considered alone or in conjunction with any other reason.

In sum, the Court finds that Mr. Powell has not presented extraordinary and compelling reasons to release him, whether considered alone or in conjunction with any other reason, so the Court need not address whether the sentencing factors listed in 18 U.S.C. § 3553(a) weigh in favor of his release. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

### III.
### CONCLUSION

For the reasons stated above, Mr. Powell's Motion for Compassionate Release, [370], is **DENIED**.

Date: 7/15/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Frank Powell
Register Number: 16358-028
USP Beaumont
US Penitentiary
P.O. Box 26030
Beaumont, TX 77720